IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNICE BAYNES, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE HOME DEPOT U.S.A., INC., | : | |
| and HOME DEPOT, | : | No. 09-3686 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                           June 9, 2011

Plaintiff Bernice Baynes slipped and fell while shopping at a Home Depot. Baynes alleges Defendant Home Depot U.S.A., Inc. ("Home Depot")[1] negligently failed to clean a slippery substance from its floor. She seeks damages for her medical expenses and pain and suffering. Baynes also requests spoliation sanctions due to Home Depot's failure to retain certain surveillance footage. Home Depot denies liability and also argues that its conduct cannot have caused all the injuries Baynes claims. The Court conducted a bench trial on June 6, 2011. For the reasons stated below, the Court finds in favor of Baynes and will award her damages in the amount of $44,383.61.

**I.    FINDINGS OF FACT**

    **A.    Baynes's Fall**

On December 19, 2007, Baynes and her sister Theresa went to the Home Depot on Columbus Boulevard in Philadelphia to purchase a lightbulb. (*See* Def.'s Pretrial Mem. 1.) Baynes stated that she was "looking all around" as she made her way through the store. She testified that she was

---

[1] Defendant Home Depot U.S.A. Inc. is a single entity incorrectly identified in the Complaint as Home Depot U.S.A., Inc. and Home Depot. (*See* Def.'s Notice of Removal 1.)

looking up toward signs hung from the ceiling that identify aisle numbers, and that she also noticed the store's Christmas decorations as she proceeded to the lightbulb aisle. Baynes slipped and fell as she made a right turn into the aisle. Laying on the ground after she fell, she noticed a six-inch puddle of what appeared to be grease covering the portion of the floor where she had slipped.

She initially felt pain in her tailbone, where her buttocks and lower back first struck the floor. Baynes also testified that she broke her fall by placing her hands behind her. She remained on the ground as store employees arrived to assist her. These employees included Matthew Dietrich, Michael Gillman, and Debra Feeney. All three testified at trial that they saw Baynes laying on the ground, and that Baynes appeared to be in pain. Dietrich saw the substance that Baynes said caused her to slip. He testified that the substance appeared to be mucus. Gillman also saw the substance, and testified that he believed it was spit. Feeney had gone for help after hearing a "ruckus," and then knelt by Baynes. Feeney testified that she asked Baynes and Baynes's sister what had caused the accident. Feeney then left to get towels, which she used to clean the substance from the floor while Baynes was still on the ground. (*See also* Pl.'s Ex. 6, Home Depot Surveillance Video [Home Depot Video].) Feeney testified that the substance may have been "green spit" and that there "wasn't that much" when she returned to clean it from the floor.

Gillman, an assistant manager, wrote down information from Baynes and noted it on a Home Depot accident report form. (*See* Pl.'s Ex. 11, General Liability Worksheet.) The form states that Baynes "was walking down Aisle 2 when she slipped and fell." It also notes that Baynes "complained of tail bone pain" at the store. (*Id.*) Paramedics transported Baynes to an emergency room for treatment. (*See* Home Depot Video.)

2

## B. Baynes's Injuries and Treatment

Philadelphia emergency medical services and the Methodist Hospital emergency room staff treated Baynes that day. (*See* Pl.'s Ex. 3, Pl.'s Med./Lien Damage Summ. [Pl.'s Med. Summ.].) An x-ray of her tailbone indicated that it was bruised, but not broken. (*See* Dep. of Dr. Jeffrey Malumed [Malumed Dep.] 14.) Baynes later saw her primary care physician, who referred her to South Philadelphia Pain Management. South Philadelphia Pain Management treated Baynes from December through early April of 2008. (Pl.'s Med. Summ.)

In the months after her fall, Baynes sought treatment for problems with her lower back, her right shoulder, and the middle fingers of both of her hands. (*See* Malumed Dep. 17.) She saw a number of doctors in the orthopedics practice at the University of Pennsylvania's Presbyterian Hospital for these conditions, including Dr. David Glaser. Baynes presented Dr. Glaser's video deposition at trial.

Reviewing Baynes's medical records, Dr. Glaser testified that Baynes had seen Dr. Pedro Beredjiklian, an orthopedic surgeon in his practice, three months after her fall. (Dep. of David Glaser [Glaser Dep.] 45.) Dr. Beredjiklian diagnosed "triggering" in Baynes's right middle finger, which made it difficult for her to open and close the digit. (*See id*.) Dr. Beredjiklian concluded that the triggering was due to post traumatic tenosynovitis, and he operated on Baynes to correct the problem in June of 2008. (*Id*. at 21-22.) A second surgeon, Dr. Bozentka, performed a similar operation on the middle finger of Baynes's left hand in May of 2009. (*Id*. at 23-24.) Both operations were successful. (*Id*. at 23, 25.)

Dr. Glaser himself treated Baynes for right rotator cuff problems. (*Id*. at 27.) Baynes came to Dr. Glaser for her shoulder pain in November of 2008. (*Id*. at 25-26.) He examined her shoulder

and concluded that Baynes had rotator cuff disease. (*Id*. at 27-28.) He first treated the condition with a subacromial injection. (*Id*. at 29.) This procedure greatly reduced Baynes's shoulder pain. (*Id*. at 30.) Dr. Glaser continued to treat Baynes through May of 2010. (*Id*. at 31.) He observed that Baynes's shoulder was improving and recommended that she try physical therapy. (*Id*. at 32.) Baynes found she could control her shoulder pain through rotator cuff exercises.

Baynes was a patient of other physicians in Dr. Glaser's practice before her accident. She received treatment from Dr. Israelite for prior knee problems, Dr. Christian Fras for her spine, and from Dr. Gentchos for her lower back. (*Id*. at 15, 46.) Dr. Gentchos had thoroughly examined Baynes a month prior to her fall; Dr. Glaser stated that this record was helpful to him in preparing his report on Baynes's injuries for trial. (*Id*. at 46.) Dr. Gentchos did not find that Baynes had triggering in her fingers during his examination of her before her fall, a fact Dr. Glaser said supported his conclusion that Baynes's accident at Home Depot caused her tenosynovitis. (*See id*. at 45-47.) Dr. Glaser stated that Baynes's diabetes possibly contributed to her finger problems; however, he concluded that her fall would have aggravated the triggering, even if it was not the sole cause of the condition. (*Id*. at 47, 51.) Dr. Glaser also testified that it is not unusual for conditions such as triggering to appear after an accident rather than immediately, as "there should be a period of time where it's not symptomatic because the nature of the problem dictates that it has to occur over some time." (*Id*. at 44.) He concluded that Baynes's fall injured or aggravated prior conditions in her fingers, shoulder, and lower back. (*Id*. at 37-38, 46-47.)

### C. Testimony of Home Depot's Medical Expert

Home Depot retained another orthopedic surgeon, Dr. Jeffrey Malumed, to offer an opinion on Baynes's alleged injuries. Home Depot presented Dr. Malumed's video deposition at trial. Dr.

4

Malumed testified that he examined Baynes on February 8, 2010. (Malumed Dep. 13.) He spoke with Baynes, reviewed her medical records, and evaluated her fingers, back and shoulder. (*See id*. at 14, 19-27.) Dr. Malumed observed that Baynes had had approximately thirty appointments at South Philadelphia Pain Management between December 2007 and April 2008, and that she had not complained of any injury to her right shoulder during that period. (*Id*. at 16-17.) He concluded that there was no connection between Baynes's shoulder pain and the accident at Home Depot because of the amount of time between Baynes's fall and her first shoulder complaint. (*Id*. at 29, 55.)

Dr. Malumed also stated that Baynes's finger problems were not related to her fall. (*Id*. at 30.) He stressed that a different physician operated on her left hand months after Dr. Beredjiklian operated on her right hand, and that Baynes had apparently not complained of pain in her left hand when she had surgery done on her right hand. (*Id*. at 31, 57.) Dr. Malumed conceded, however, that a fall could induce triggering of the sort Baynes experienced. (*Id*. at 64.)

### D. Home Depot's Video Surveillance and Preparation for Litigation

#### 1. *Home Depot's Retention of Video Evidence*

George Elwell, a Home Depot employee, testified that he worked as an asset protection manager at the time of Baynes's fall. Elwell was not involved with the retention of evidence in this case. However, Elwell stated that he was the asset protection manager responsible for the store where Baynes fell, and described the video surveillance system at the store and its standard procedure for identifying and retaining sections of video. Elwell explained that the Columbus Boulevard store's camera system feeds data to a digital video recording device ("DVR"). The system thus does not use disks or tapes; it simply records and saves data to a local hard drive. Depending on the number of cameras active in a store, the system records over old data every thirty

to ninety days. Elwell believed the Columbus Boulevard system may have kept data for sixty days around the time of Baynes's fall, but stated that he could not be certain.

Elwell testified that a store's asset protection department can save video from the DVR to a disk. However, he also stated that asset protection employees do not have independent authority to save video or to determine which portions of a video to retain. Rather, a Home Depot claims manager or an "investigating assistant manager" would have to request that the asset protection department save a particular segment of video. Elwell also testified that, in slip-and-fall cases, the store generally attempted to save video documenting the cause of the accident. For example, Elwell stated, Home Depot would likely have an asset protection employee identify and retain video showing how a shopping cart came to be in a particular location if a customer later tripped over the cart. Elwell also testified that this procedure applied to accidents involving wet substances.

Other Home Depot employees including Dietrich and Gillman testified that only employees in the asset protection department had access to the store's video surveillance system. Gillman, an assistant manager, stated that he did not have a key to the room housing the DVR system. No Home Depot employee testified at trial that they were responsible for or involved in selecting which portion of tape to save in Baynes's case. Jason Herb, an assistant manager, stated that he was generally responsible for investigating accidents at the store. He testified, however, that he had not investigated Baynes's fall. Meanwhile, Gillman testified that he did not ask asset protection to preserve video and was not the "investigating assistant manager," despite filling out the incident report for Baynes's accident.

    2.    *Home Depot's Preparation for Litigation*

Feeney testified that either an assistant manager or asset protection employee spoke with her

6

after Baynes's accident and asked her to prepare a statement in case of legal action. Feeney prepared her statement around December 28, 2007. Around that time, the store's senior loss prevention employee also told her that she should not have removed the substance on which Baynes had slipped, as he wanted to examine it.

Baynes's counsel sent the Columbus Boulevard Home Depot a letter requesting that the store preserve video surveillance footage from four hours prior to Baynes's accident through one hour after the accident. (Pl.'s Ex. 5, Feb. 5, 2008 Baynes discovery letter.) Counsel did not address the letter to a particular employee. (*See id*.) Gillman testified that attorney correspondence addressed to the store is generally faxed directly to the legal department. A store employee signed for the letter on February 8, 2008. (*Id*.; *see also* Def.'s Pretrial Mem. ¶ 7.) However, Home Depot preserved and produced only about twenty minutes of footage, beginning less than a minute before Baynes's accident and continuing through her removal from the store by paramedics. (*See* Home Depot Video.)

## II. CONCLUSIONS OF LAW

As a threshold matter, the Court will address Baynes's request for spoliation sanctions. Because Home Depot's destruction of evidence warrants a spoliation inference, the Court will apply this sanction in determining liability.

### A. Spoliation

#### 1. *Whether Home Depot destroyed evidence*

Courts may impose spoliation sanctions for destruction of evidence where: (1) the evidence was within the alleged spoliator's control; (2) there has been actual suppression or withholding of

the evidence; (3) the evidence was relevant; and (4) it was reasonably foreseeable that the evidence would be discoverable. *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 112 (E.D. Pa. 2005) (citations omitted). The existence of bad faith or an "evil motive" is not a prerequisite to the imposition of spoliation sanctions. *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994). Unintentional destruction of evidence, "if the result of unreasonable conduct, subjects a party to sanctions." *Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC*, Civ. A. No. 05-6399, 2007 WL 2571450, at *5 n.28 (E.D. Pa. Aug. 31, 2007). However, courts decline to sanction purely accidental conduct, where the evidence "in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

Baynes has shown that spoliation sanctions are appropriate in this case. The parties do not dispute that the Columbus Boulevard store's DVR system is within Home Depot's control. Footage of the area in which Baynes fell depicting the store prior to her fall is clearly relevant. As discussed below, Baynes must present evidence that Home Depot had notice of the slippery substance prior to her accident to make out her premises liability claim. Indeed, Home Depot's request for a directed verdict due to the alleged absence of such evidence underscores the relevance of that portion of the tape. It was also foreseeable that the complete video would be discoverable. Home Depot's conduct in taking an employee statement and conducting an internal inquiry into Baynes's fall, including its decision to save a selected portion of the video, indicates that Home Depot indeed foresaw that litigation was imminent.

Home Depot argues that deletion of the rest of the video was accidental. The company asserts that there is no evidence an employee with authority to preserve the video footage received

8

Baynes's request before the DVR recorded over itself. (Def.'s Pretrial Mem. ¶¶ 7-8.) Specifically, Home Depot observes that Baynes's letter arrived toward the "expiration of the 60 days within which [the] video surveillance system reuses data storage." (*Id.* ¶ 7.) This explanation does not account for Home Depot's failure to retain the complete video.

If Home Depot's assertion that the store's DVR system recorded over its data every sixty days is accurate, the store had nine days to sort Baynes's letter, direct it to the legal department, and retain the footage Baynes requested. The evidence does not explain Home Depot's failure to do so. Rather, the trial testimony of Home Depot's employees demonstrated that the store anticipated litigation as a result of Baynes's fall and independently preserved footage for its own investigation, but discarded the remaining film. This conduct demonstrates a "level of negligence or recklessness in failing to preserve evidence for an opposing party's examination" sufficient to warrant spoliation sanctions. *See Cooper Crouse-Hinds*, 2007 WL 2571450, at *7 n.35.

        *2.      An adverse inference is an appropriate sanction*

To determine which spoliation sanction is appropriate, courts in this Circuit consider: (1) the spoliator's degree of fault; (2) the resulting prejudice to the opposing party; and (3) the availability of a lesser sanction that will both avoid substantial unfairness and, if necessary, serve to deter future spoliation. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994); *see also Schroeder v. Commw. Dep't of Transp.*, 710 A.2d 23, 27 (Pa. 1998) (adopting the Third Circuit's spoliation analysis).

Home Depot retained evidence of Baynes's fall, but disposed of video footage which may have shown how long the substance Baynes slipped on was present on the store's floor. Elwell's testimony that Home Depot generally retained footage indicating the cause of slip-and-fall accidents

9

in the store underscores the company's inexplicable decision not to retain evidence despite pending litigation and a request from Baynes's counsel. This conduct demonstrates a degree of fault warranting an adverse inference. *See Ogin v. Ahmed*, 563 F. Supp. 2d 539, 546 (M.D. Pa. 2008) (imposing adverse inference sanction where Defendants "unilaterally determined the relevance" of certain trucking logs and destroyed three weeks' worth of other records).

Home Depot's failure to retain all but twenty minutes of surveillance tape from the date of Baynes's fall greatly prejudices her case. It is all but impossible to establish the length of time the substance was on the floor without this evidence, which is an essential element of Baynes's case. Plaintiffs have established this duration element in similar cases by introducing evidence of the amount of grime or stickiness of a spill, which may demonstrate how long it has remained on the floor. *See, e.g., Farina v. Miggys Corp. Five & Six*, Civ. A. No. 09-141, 2010 WL 3024757, at *10 (M.D. Pa. July 29, 2010) (concluding "large sticky, grimy floor spot that lacks moisture indicates a passage of time" sufficient to support premises liability theory). Home Depot's failure to document the spill in any other way denied Baynes this means of proving her case as well. The company's own failure to retain evidence could thus potentially eviscerate Baynes's claims.

The Court will therefore apply a spoliation inference with respect to the missing video. This sanction is relatively mild compared with the range of remedies available to the Court. *See Stafford Invs. LLC v. Vito*, Civ. A. Nos. 04-3182, 06-1112, 06-4424, 2008 WL 5062136, at *5 (E.D. Pa. Dec. 1, 2008) (referencing "range of sanctions" from default to adverse inference). This sanction appropriately compensates for Home Depot's recklessness in failing to preserve evidence and will hopefully deter such conduct in the future. The Court therefore infers that the video would have shown that the slippery substance was present long enough for Home Depot to have had sufficient

time to discover and correct the dangerous condition in its store.

With this adverse inference in mind, the Court turns to the merits of Baynes's claims.

**B.      Premises Liability**

The parties do not dispute that Baynes, a Home Depot customer, was a business invitee at the time of her fall. Under Pennsylvania law, landowners owe business invitees "the highest duty owed to any entrant upon land." *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. Ct. 2006); *see also Flickinger v. Toys R Us, Inc.*, Civ. A. No. 10-305, 2011 WL 2160493, at *3 (M.D. Pa. May 31, 2011). Pennsylvania law imposes liability for physical harm to business invitees due to dangerous conditions on the property, if the landowner: (1) knows or reasonably should have known of the dangerous condition; (2) should have expected that the invitee would not discover or realize the danger; and (3) failed to exercise reasonable care to protect the invitee against the danger. *See, e.g., Farina*, 2010 WL 3024757, at *4 (citing Restatement (Second) of Torts § 343). However, courts applying this analysis are mindful that store owners are not insurers of their customers' safety. *Id*. at *7 (citing *Myers v. Penn Traffic Co.*, 606 A.2d 926 (Pa. Super. Ct. 1992)).

To make out a prima facie case in a premises liability action, a plaintiff must show that the landowner either helped to create the harmful condition, or that he it had actual or constructive notice of the condition. *Hower v. Wal-Mart Stores, Inc.*, Civ. A. No. 08-1736, 2009 WL 1688474, at *3 (E.D. Pa. June 16, 2009). Baynes has introduced no evidence that Home Depot created the spill or that a Home Depot employee was aware of the spill prior to Baynes's fall. Baynes must therefore demonstrate that Home Depot had constructive notice of the substance to prevail.

Courts consider a variety of factors in determining whether a landowner had constructive notice of a dangerous condition on its property, including: (1) the time elapsing between the creation

11

of the defect and the accident; (2) the size and physical condition of the premises; (3) the nature of the business conducted there; (4) the probable cause of the condition; and (5) the opportunity a reasonably prudent person would have had to remedy it. *Henderson v. J.C. Penney Corp., Inc.*, Civ. A. No. 08-177, 2009 WL 426180, at *4 (E.D. Pa. Feb. 20, 2009) (citing *Bremer v. W.W. Smith, Inc.*, 191 A. 395, 397 (Pa. Super. Ct. 1937)). Taking into account the spoliation inference Home Depot triggered through its destruction of video evidence, the Court infers that the surveillance footage Baynes requested would have been adverse to Home Depot. This inference allows the Court to conclude that Home Depot had sufficient time to discover the dangerous condition. In addition, Baynes testified credibly that the substance appeared to her to be grease. Such a substance, as opposed to spit or water, would likely have remained on the ground for a longer period of time without evaporating.

Furthermore, the evidence at trial established that Home Depot employees constantly move throughout the store and consider it their responsibility to remedy any dangerous conditions they encounter. While it is impossible to determine the origin of the slippery substance Baynes encountered, the nature of Home Depot's business weighs in Baynes's favor. Home Depot is a retail hardware store which both hosts a large number of customers and houses potentially hazardous merchandise. The nature of Home Depot's business and its practice of constant inspection and correction of dangerous conditions in its stores indicate that Home Depot breached its duty of care by permitting a slip-and-fall hazard to remain near the end of the lightbulb aisle. Taking these factors into account, the Court concludes that Baynes has established Home Depot's liability on her premises liability claim.

C.     **Damages**

Baynes seeks $19,383.61 in medical expenses. Dr. Glaser's testimony established that these expenses were reasonable. Furthermore, Dr. Malumed's testimony that too much time elapsed between Baynes's fall and the onset of her finger and shoulder conditions is not persuasive. Dr. Glaser credibly testified that these conditions were related to Baynes's fall and that the timing of her symptoms was fairly common given the nature of her injuries. (*See* Glaser Dep. 19.) Baynes may therefore recover for medical expenses incurred due to all of the injuries that she alleges stem from her fall: her finger operations, shoulder procedure, and the aggravation of her back pain.

Baynes also made claims for past and future pain and suffering, and loss of enjoyment of life's pleasures. She testified that she has managed to control her shoulder pain through physical therapy and exercise. Her fingers ache, however, and she can no longer style her hair or play with her granddaughter as she did before her fall. The Court will award Baynes an additional $25,000 to compensate her for her pain and suffering and loss of enjoyment. Taking the specific circumstances of this case into account, the Court concludes that this amount accurately reflects the seriousness of Baynes's injuries and their consequences. *Cf. Nicholson v. Esteves*, Civ. A. No. 08-3776, 2010 WL 914931, at *7 (E.D. Pa. Mar. 12, 2010) (awarding compensatory damages of $2,115 for medical expenses and $75,000 for pain and suffering); *Andrews v. Karras*, Civ. A. No. 97-3414, 1998 WL 754724, at *5-6 (E.D. Pa. Oct. 29, 1998) (discussing damages awards for pain and suffering).

III.    **CONCLUSION**

Having demonstrated the appropriateness of a spoliation inference, Baynes prevailed on her premises liability claim against Home Depot. Baynes also showed that the medical expenses she

claims were incurred due to Home Depot's negligence, as they stem from her fall in the store. The Court will therefore award Baynes $44,383.61 in damages. A Judgment and Order consistent with this Memorandum will be docketed separately.